IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALAN S. HAMBY                                                                              PLAINTIFF

vs.                                        CIVIL NO. 05-6017

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                        DEFENDANT

**MEMORANDUM OPINION**

Alan Hamby (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his applications for disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on March 31, 1999, alleging an onset date of November 30, 1996, due to compression fractures in the lower back, bursitis in the elbow, left ankle swelling and numbness, epilepsy, Hepatitis B and C, chronic headaches, anxiety, major depression with psychosis, schizophrenia, schizoaffective disorder,[1] bipolar disorder

---

[1] Schizoaffective disorder is a perplexing mental illness distinguished by a combination of symptoms of a thought disorder, or other psychotic symptoms such as hallucinations or delusions (schizophrenia component), and those of a mood disorder (depressive or manic component). . . . The diagnosis is made when the patient has features of both illnesses but does not strictly meet diagnostic criteria for either schizophrenia or a mood disorder alone. *See* Guy E. Brannon, *Schizoaffective Disorder*, *at* www.emedicine.com; *see also*, *Hutsell v. Massanari*, 259 F.3d 707, 709 (8th Cir. 2001) (citing STEDMAN'S MEDICAL DICTIONARY, p. 1579 (26th ed. 1995); DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR, p. 319 (Fourth Ed. 2000).

with psychosis, short-term memory loss, and poor concentration. (Tr. 70-73, 323-325, 341). An administrative hearing was held on July 11, 2000. (Tr. 31-55). The Administrative Law Judge ("ALJ"), denied plaintiff's claim on November 29, 2000. (Tr. 8-17). However, pursuant to the Commissioner's motion to remand, the United States District Court for the Eastern District of Arkansas remanded this case for further proceedings. (Tr. 341, 361-363). On August 21, 2003, a supplemental hearing was held. (Tr. 809-863).

At the time of the supplemental administrative hearing on August 21, 2003, plaintiff was forty-four years old and possessed an eleventh grade education. (Tr. 341). The record reveals that he had past relevant work ("PRW"), as a warehouse worker and construction laborer. (Tr. 341).

On February 10, 2004, the ALJ found that plaintiff had severe impairments, including seizure disorder, degenerative joint disease ("DJD"), schizophrenia, schizoaffective disorder, bipolar disorder with psychosis, and major depression with psychosis, but that those impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 350). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ("RFC"), to perform light unskilled work, limited by his ability to only occasionally bend, and an inability to perform overhead work; operate automotive equipment or carry firearms; and, work near unprotected heights, and open and dangerous machinery. (Tr. 350). From a mental perspective, the ALJ also determined that plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote, the work involved few variables and required little independent

judgment, and the supervision required was simple, direct, and concrete. (Tr. 351). With the assistance of a vocational expert ("VE"), the ALJ determined that plaintiff could no longer perform his PRW. However, the VE testified that a person with plaintiff's RFC could still perform jobs such as small products assembler and cashier. (Tr. 351).

On January 3, 2005, the Appeals Council declined to review this decision. (Tr. 333-335). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 8).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.

3

*Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevent him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's mental RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

In the present case, the ALJ concluded that plaintiff's mental limitations enabled him to perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote, the work involved few variables and required little independent judgment, and the supervision required was simple, direct, and concrete. (Tr. 351). In essence, he found plaintiff capable of performing unskilled work. (Tr. 349). The ALJ also determined that plaintiff had only mild limitations concerning his ability to perform activities of daily living; no deficiencies in concentration, persistence or pace; and, had experienced no episodes of

decompensation. (Tr. 348).

We note, however, that this determination is not supported by substantial evidence. As stated above, the medical evidence of record shows that plaintiff was suffering from schizoaffective disorder. On May 5, 1999, Dr. Dan Donahue, a non-examining psychologist, completed a mental RFC assessment of plaintiff. (Tr. 141-153). After reviewing plaintiff's medical records, he determined that plaintiff had moderate restrictions regarding his activities of daily living and ability to maintain social functioning. (Tr. 148). Dr. Donahue also found that plaintiff would often have deficiencies in concentration, persistence, or pace, and had experienced one or two episodes of decompensation. He then concluded that plaintiff was moderately limited regarding his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal work-day and workweek without interruptions; set realistic goals; and, make plans independently of others. (Tr. 150-151).

The record reveals that plaintiff had a great deal of difficulty with his medications and getting the dosage adjusted so that he could sleep at night and remain awake during the day. (Tr. 246, 367-404, 557, 615, 645-646, 648, 665, 669, 673, 675, 723, 735, 739, 747, 794). In fact, daytime drowsiness interfered with plaintiff's ability to attend and participate in group therapy. (Tr. 246, 367-404, 557, 615, 645-646, 648, 665, 669, 673, 675, 723, 735, 739, 747, 794). Plaintiff also suffered from auditory hallucinations and "episodic" visual hallucinations of a demon, even when taking his medication as prescribed. (Tr. 157, 159, 163, 246, 430, 447-448, 450, 452, 566, 576, 628, 649, 692, 719, 744, 752, 794, 805). While the medication did lower the auditory hallucinations to mumbles,

this problem was never fully corrected. Further, during the relevant time period, plaintiff spent a considerable amount of time in group homes, rather than living and functioning in an independent capacity. (Tr. 298-322, 643-686). Progress notes from plaintiff's treating physicians show that plaintiff's global assessment of functioning score ("GAF"), between 1999 (when his schizoaffective symptoms became prominent), and 2003, never went above fifty-one, with the most common rating being thirty-one. (Tr. 159, 367, 557, 567, 628, 649, 668, 795, 799). According to the *Diagnostic and Statistical Manual of Mental Disorders*, a GAF of fifty-one reflects moderate symptoms, or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR, p. 34 (4th ed. 2000). Further, a GAF of thirty-one reveals some impairment in reality testing or communication, or a major impairment in several activities of daily living. *Id*.

During the relevant time period, plaintiff also suffered from the manic and depressive mood swings associated with his disorder. (Tr. 163, 178, 246, 247, 407-446, 452, 557, 566, 597, 618, 807). As a result, his condition necessitated at least four hospitalizations. (Tr. 293, 460, 367-404, 405-410). Two of these hospitalizations were due to suicidal ideations, one was the result of bizarre and abnormal behaviors exhibited by plaintiff, and one was the result of an alcohol and drug abuse relapse he suffered during a manic episode. (Tr. 293, 460, 376-404, 405-410). However, the ALJ neither discussed nor considered this evidence when concluding that plaintiff's mental limitations allowed him to perform unskilled work. As such, we believe that remand is necessary to allow the ALJ to reconsider plaintiff's mental limitations.

We also note that the record does not contain a definition of schizoaffective disorder, and the ALJ did not attempt to define or explain the nature of this impairment. As such, it is not clear that the ALJ understood the specifics of plaintiff's condition. Further, the only mental RFC assessment contained in the file was completed in 1999. (Tr. 141-153). "While a claimant for benefits has the burden of proving a disability, the Secretary has the 'duty to develop the record fully and fairly, even if . . . the claimant is represented by counsel.'" *See Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

Given the nature of plaintiff's impairment, and the evidence contained in the record documenting plaintiff's limitations, we believe that it was error for the ALJ not to have at least requested a mental RFC assessment from plaintiff's treating physicians. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). Accordingly, on remand, the ALJ is directed to address interrogatories to plaintiff's treating physicians, asking them to review plaintiff's medical records and complete a mental RFC assessment regarding plaintiff's mental capabilities during the time period in question. The physicians should also be asked to provide the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). When making his final determination, the ALJ should provide "good reasons" for the particular

weight given to the treating physicians' evaluations. 20 C.F.R § 404.1527(d)(2); *see also* SSR 96-2p; *See Prosch v. Apfel,* 201 F.3d at 1010, 1012-13 (8th Cir. 2000).

It is also significant to note that the ALJ failed to consider the fact that plaintiff had been prescribed a cane. On May 14, 2003, plaintiff reported for therapy gym for the issuance of a standard cane. (Tr. 801). Records indicate that his back pain necessitated a prescription for this device. It was noted that plaintiff ambulated into the clinic without an assistive device, but that his gait was narrow, and he had decreased stance time on the left lower extremity. (Tr. 802). This is substantiated by bone scans conducted in November 2002 and February 2003, which revealed degenerative arthritic changes in the mid-thoracic and lower lumbosacral spine, shoulders, right elbow, knees, ankles, and feet. (Tr. 534, 546). However, this evidence was not factored into the ALJ's determination that plaintiff could stand and/or walk for six hours during an eight-hour workday. (Tr. 349). *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). As such, on remand, the ALJ is directed to reconsider this evidence before making a final determination as to plaintiff's physical limitations.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 31st day of March 2006.

    /s/ Bobby E. Shepherd
    HONORABLE BOBBY E. SHEPHERD
    UNITED STATES MAGISTRATE JUDGE